## APPEAL OF CHICAGO RAILWAY EQUIPMENT CO.

Docket No. 3964.   Decided July 28, 1926.

1. Evidence *held* insufficient to show that the Commissioner's determination of the fair market price or value of buildings, machinery, and equipment on March 1, 1913, and the cost of subsequent additions, for the purpose of deductions for exhaustion, wear and tear for the years 1917, 1918 and 1919, was erroneous.

2. The Commissioner correctly denied a deduction claimed for 1918 on account of debts which were neither ascertained to be worthless nor charged off within that year.

3. In February or March, 1919, the petitioner charged off certain debts totaling $40,101.67 as worthless as of December 31, 1918, and claimed a deduction of that amount from gross income for 1918. The Commissioner denied the deduction for 1918 but allowed a deduction of $6,884.58 for 1919. Upon the evidence, *held*, that the Commissioner should have allowed a deduction for 1919 of $33,000 on account of debts ascertained to be worthless and charged off within that year.

4. Evidence *held* insufficient to show that the taxpayer was entitled to a deduction for exhaustion of machinery and equipment of 100 per cent in excess of the normal and customary rate.

*William S. Oppenheim, Esq.,* for the petitioner.
*L. C. Mitchell, Esq.,* for the Commissioner.

Before LITTLETON, SMITH, and TRUSSELL.

This proceeding was instituted for the purpose of testing the correctness of the Commissioner's determination of deficiencies in income and profits tax for the calendar years 1917, 1918 and 1919, in the amounts of $22,337.85, $85,915.59, and $15,609.91, respectively, in so far as they result from a disagreement as to (1) the values of certain buildings, machinery, and equipment as of March 1, 1913, for the purpose of the deduction for exhaustion, wear and tear thereof; (2) the rates to be applied in computing the deductions for exhaustion, wear and tear of the machinery and equipment; and (3) the propriety of deductions on account of certain debts alleged to have been ascertained to be worthless and charged off within the year 1918.

### FINDINGS OF FACT.

The petitioner is an Illinois corporation, engaged principally in the manufacture of railway equipment, with plants at Franklin, Pa., Marion, Ind., Grand Rapids and Detroit, Mich., and Chicago, Ill. It was organized in 1890.

Prior to 1900 petitioner conducted its business in Chicago where it had erected a brick and concrete plant and installed therein certain machinery. During the period from 1900 to 1904 it

constructed a plant consisting of buildings and machinery, at Detroit, Mich., and between that date and 1917 certain additions and replacements were made. In 1905 it acquired a malleable iron plant consisting of buildings, machinery, and equipment, at Grand Rapids, Mich., at a cost of $62,500. Between that date and 1917 certain additions and replacements were made. At the time this plant was purchased, it was being operated by a creditors' committee. In 1906 it acquired a similar malleable iron foundry, which was being operated at Marion, Ind., at a cost of $92,000. Between this date and 1917 considerable additions and replacements were made. In 1907 it constructed what is now its principal office building and brake beam plant, at 46th and Robey Streets, Chicago, and installed therein certain machinery. Between this date and 1917 considerable additions and replacements were made. In 1912 it acquired a rolling mill plant, together with machinery, at Franklin, Pa., which was in the hands of a receiver, at a cost of $175,000, and thereafter made numerous additions and replacements. In 1913 about three-fourths of this plant was destroyed by fire but it was immediately reconstructed. In addition the petitioner erected at Franklin, during the years 1913 and 1914, a brake beam plant of brick and concrete construction and installed therein the necessary machinery.

In the latter part of 1915, the petitioner caused an appraisal to be made of its various properties for the purpose of securing an inventory thereof; also, for the purpose of placing insurance thereon. These appraisals were made upon the basis of cost of reproduction of the various buildings, machinery, and equipment, as of December 31, 1915, and showed the reproduction cost thereof as follows:

CHICAGO:
    4060 Princeton St.—
        1 building _____ $34,602.31
        Fixtures _____ 3,340.66
           Total_____ $37,942.97
    46th & Robey Sts., Brake Beam Plant—
        7 buildings_____ 182,762.09
        Power, machinery, tools, equipment and office
          furniture _____ 161,838.68
           Total_____ 344,600.77
MARION PLANT:
    26 buildings_____ $157,466.75
    Power, machinery, tools, equipment, and office furniture _____ 175,988.63
        Total_____ 333,455.38
GRAND RAPIDS PLANT:
    15 buildings_____ $143,568.37
    Power, machinery, tools, equipment and office furniture _____ 211,272.07
        Total_____ 354,841.07

DETROIT PLANT:

3 buildings_____ $49, 937. 25

Power, machinery, tools, equipment and office furniture _____ 106, 248. 14

 Total_____ $156, 185. 39

FRANKLIN PLANT:

13 buildings_____ $163, 742. 02

Power, machinery, tools, equipment and office furniture _____ 330, 143, 87

 Total_____ 493, 885. 89

The reproduction cost of the properties owned by the taxpayer on March 1, 1913, was substantially the same as such cost of properties owned on December 31, 1915. The petitioner entered the above values upon its books as of December 31, 1915, and set up as a depreciation reserve for exhaustion, wear and tear to that date the amount of $280,000. In each of the taxable years the petitioner claimed a deduction of $150,000 for exhaustion, wear and tear of its entire properties.

The Commissioner declined to approve the claim that the March 1, 1913, value of the buildings and equipment for the purpose of computing the deduction for exhaustion, wear and tear thereof should be determined by taking the amounts shown by the appraisals reflecting the cost of reproduction new on December 31, 1915, and deducting therefrom the cost of additions and replacements between March 1, 1913, and December 31, 1915. Instead, he computed the allowance for exhaustion, wear and tear of the buildings, machinery and equipment upon the basis of undepreciated cost on March 1, 1913, plus the cost of additions since that time, as representing, in the absence of better evidence, the fair market price, or values on March 1, 1913. For the purpose of this deduction, in respect of buildings which were computed at the rate of 3 per cent, the Commissioner determined that the value on March 1, 1913, plus the cost of additions to December 31, 1916, was $547,824.17; that during the year 1917 the petitioner made additions costing $23,064.53, averaged for six months in the amount of $11,532.29, giving a total of $559,356.46, upon which he allowed a deduction for 1917 of $16,780.59.

For 1918 he determined a cost of $570,888.70 at the beginning of the year, which, plus additions during the year costing $26,610.15, averaged for six months in the amount of $13,305.08, totaled $584,-193.78, upon which he allowed a deduction of $17,528.81.

For 1919 he determined a cost of $597,498.85 at the beginning of the year, plus additions during the year costing $9,199.17, averaged for six months in the amount of $4,599.59, totaling $602,098.44, upon which he allowed a deduction of $18,062.95.

For the purpose of the deduction in respect of the power plant, which was computed at the rate of 5 per cent, the Commissioner de-

termined a cost, including the cost of additions to December 31, 1916, of $355,054.06, with no additions during any of the years 1917 to 1919, inclusive, and allowed $17,752.70 for each of the years.

For the purpose of a similar deduction in respect of the machinery and tools, which he computed at the rate of 10 per cent, the Commissioner determined a cost, including the cost of additions to December 31, 1916, of $416,320.49, which, with the cost of additions during the year 1917 of $25,358.41, averaged for six months in the amount of $12,679.71, totaled $428,999.70, upon which he allowed $42,900.97 for 1917.

For the year 1918 he determined a cost at the beginning of the year of $441,688.90, to which he added items previously eliminated but still in use of $6,104.06, making a total of $447,792.96, with no additions during the year, upon which he allowed a deduction of $44,779.30.

For the year 1919 he determined a cost at the begininng of the year of $446,949.61, property of the value of $843.35 having been disposed of, with no additions during the year, with the result that a deduction of $44,694.96 was allowed.

In February or March, 1919, the petitioner called in a firm of accountants to audit its books for the year 1918. During the course of the audit these accountants recommended to the officers of the company that certain accounts for materials shipped from the various plants be charged off as worthless as of December 31, 1918.

After going over the accounts, the president of the company directed that the accountants charge off certain accounts, as of December 31, 1918, as follows:

| | |
|---|---:|
| Pittsburgh Hickson & Co | $9,000.00 |
| Lawson Construction Co | 2,000.54 |
| St. Louis Car Co | 1,100.00 |
| W. K. Milholland | 87.35 |
| Superba Manufacturing Co | 1,396.46 |
| Maxfer Truck Co | 6,000.00 |
| Smith Motor Truck Co | 18,217.17 |
| Star Specialty Manufacturing Co | 2,300.15 |
| Total | 40,101.67 |

The Commissioner held that the above accounts were not allowable as a deduction from gross income for the year 1918, for the reason that they were not ascertained to be worthless and charged off within that year. For the year 1919 the Commissioner disallowed a deduction from gross income on account of debts alleged to have been ascertained to be worthless and charged off within that year of $25,061.58. The facts upon which the petitioner based its determination that the above accounts were worthless follow:

*Pittsburgh Hickson & Co.:* This item consisted of two notes of $5,000 each, dated June 13, 1917. The company was in financial difficulties when the notes were given and there was considerable doubt if the notes would be paid. In August, 1917, it was declared bankrupt and a receiver appointed. On November 29, 1918, the receiver made a payment to the petitioner of $1,000. At the time the account was charged off at the direction of the president he knew the condition of the bankrupt company and the nature of its assets and liabilities, and from this information he was convinced that the account was worthless. In 1920 the receiver made another payment of $800 and in 1921 he made a payment of $162.80.

*Lawson Construction Co.:* This item represented amounts due the petitioner for materials shipped between April 11, 1917, and May 28, 1917. On July 30, 1917, the debtor paid $1,000 on account.

*St. Louis Car Co.:* This item consisted of 11 shares of the capital stock of the St. Louis Car Co. of the par value of $1,100 taken by the petitioner in a reorganization in 1912 in payment of an account due it. No dividends were paid on the stock. In November, 1916, the petitioner was offered $50 a share for the stock which it declined to accept. At the time of the audit of its books in March, 1919, the petitioner made inquiry of certain firms engaged in the purchase and sale of stocks and received information that this stock was of little value, perhaps not exceeding $1 a share. The St. Louis Car Co. was in existence during 1918 and 1919 and had not disposed of its assets.

*W. K. Milholland:* This item represented a charge against this individual in May, 1918, on which no payment had been received up to the date the account was charged off.

*Superba Manufacturing Co.:* This item represented a note given to the taxpayer on February 10, 1917, on which no payments had been made up to the time the account was charged off. The debtor paid $1,238.45 during 1919.

*Maxfer Truck Co.:* This account originally amounted to approximately $20,000. In September, 1916, a creditors' committee, of which the president of the petitioner was a member, was formed and in October, 1917, notes were given for the amount of the claims against the Truck Company payable monthly. An audit of the affairs of the Truck Company on December 27, 1917, showed quick assets of $151,417.58 and current liabilities of $177,936. During the year prior to 1917, certain auditors filed bankruptcy proceedings against this company and a trustee was appointed. The business was carried on and up to August 5, 1918, 60 per cent of the indebtedness of the company had been paid off, the taxpayer receiving, during 1917, $14,000 on its account. At the time the account was charged

off the affairs of the company were being liquidated and it had insufficient assets to make any further payments on its indebtedness.

*Smith Motor Truck Co.:* This item was for materials sold in June and August, 1917. The last payment which the petitioner received from this company was on September 15, 1917. On October 6, 1917, a creditors' committee took charge of the affairs of the company and agreed to pay 20 per cent of this account on April 5, 1918, and 80 per cent on October 5, 1918. The April 5, 1918, payment was not made and on September 16, 1918, the committee advised that they would be unable to continue the business and had no funds with which to make any payments on the account. A petition in bankruptcy was filed and a receiver was appointed but no attempt was made to operate the business. The president of the petitioner investigated the probability of the company being able to collect anything on the account and he concluded from the information which he obtained that the debt was worthless and could not be collected. During the period from 1919 to 1921, $3,252.54 was received in liquidation of the company.

*Star Specialty Manufacturing Co.:* This item consisted of charges made during the period from March to September, 1917. No payments had been made by the debtor up to the time the account was charged off.

The Commissioner reduced the petitioner's invested capital for the years 1917, 1918, and 1919, on account of taxes upon the income for the preceding year paid during the year, pursuant to Regulations 45, article 845.

OPINION.

LITTLETON: The petitioner contends that the Commissioner erred (1) in computing the deductions for exhaustion, wear and tear of buildings, machinery, and equipment, in that his determination of values as of March 1, 1913, and of the cost of additions and replacements made subsequent to March 1, 1913, was inaccurate; (2) that this deduction, in respect of steel and corrugated iron buildings, should have been computed at the rate of 5 per cent instead of 3 per cent; (3) that the deduction on account of exhaustion of machinery and equipment should have been computed at the rate of 20 per cent instead of 10 per cent; (4) that certain deductions on account of debts alleged to have been worthless and charged off within the year 1918 were erroneously disallowed by the Commissioner, and (5) that the invested capital for the taxable years should not have been reduced on account of the tax paid during the year upon the income for the preceding year.

The only evidence submitted by the taxpayer in support of its claim that the values on March 1, 1913, of its buildings, machinery and equipment were greater than those determined by the Com-

missioner, consists of appraisals made of its various properties on December 31, 1915, upon the basis of cost of reproduction of the property on hand as of that date. It is contended that the Board should accept these appraisals for the purpose of arriving at the fair market price or value of the various properties on March 1, 1913, by eliminating from the values fixed by the appraisal the cost of additions between March 1, 1913, and December 31, 1915, and by subtracting from the remaining amounts $131,000, representing depreciation for years prior to 1913. No evidence of any character was submitted showing the fair market price or value of the properties in question on March 1, 1913, or showing that the taxpayer's method of determining the value on March 1, 1913, upon the basis of cost of reproduction less depreciation, in any way represented the fair market value on that date. The taxpayer's auditor undertook to testify as to what the company's books contained relative to the original cost of the various properties owned by it on March 1, 1913, and the cost of additions subsequent thereto. The books of account were not produced at the hearing nor were their contents offered in evidence in a competent manner. The Commissioner objected to the testimony of the witness as to what the books contained, upon the ground that the books were the best evidence of their contents. In these circumstances, the Board can not accept the testimony offered as proof of the original cost of the properties or the cost of subsequent additions and improvements. In any event, cost of reproduction on December 31, 1915, less an estimated amount for depreciation to the basic date, can not be accepted as representing the fair market price or value on March 1, 1913, for the purpose of deduction for exhaustion, wear and tear thereof, in the absence of proper evidence that the fair market price or value was equal to such reproduction cost. *Appeals of Rockford Malleable Iron Works*, 2 B. T. A. 817; *Tibby-Brawner Glass Co.*, 2 B. T. A. 918; *Stokes Milling Co.*, 2 B. T. A. 1284; *Strong, Hewat & Co.*, 3 B. T. A. 1035.

In addition to the lack of competent evidence of the market value on March 1, 1913, of the various properties, the Board is without any information as to the probable remaining useful life on that date of the plants purchased by the petitioner at Detroit and Grand Rapids, Mich., Marion, Ind., and Franklin, Pa.

The only evidence in support of the taxpayer's claim that it should be allowed a deduction for exhaustion, wear and tear of the machinery and equipment during the taxable years at the rate of 20 per cent instead of 10 per cent, consists of testimony that during those years its production in tonnage was slightly greater than in prior years, and that, due to war conditions, the labor employed in its various plants was inefficient. The Franklin, Pa.,

plant occasionally operated at night, otherwise the usual number of hours per week was maintained in the operation of the various plants. It appears that during the taxable years considerable additions were made to the plants and that the machinery and equipment were kept in good repair. In the opinion of the Board, the evidence on this point does not warrant an allowance for exhaustion, wear and tear of machinery and equipment at the rate of 20 per cent during the taxable years.

The taxpayer further claims that the Commissioner erroneously included in the " Power Plant Account " equipment of the value of $253,272.45 and computed the exhaustion thereof at the rate of 5 per cent, which equipment should have been placed in the " Machinery Account " and exhausted at the rate of 10 per cent. The Board is without sufficient evidence to show that the Commissioner erred in this respect.

As to the claim that the Commissioner erred in disallowing a deduction of $40,101.67 on account of debts alleged to have been ascertained to be worthless and charged off within the taxable year 1918, it appears that no effort was made during the year 1918 to determine whether or not the debts claimed to have been worthless were in fact without value, and it further appears that they were not charged off until some time in February or March, 1919. Under these circumstances, the Commissioner correctly disallowed the deduction of this amount from gross income for the year 1918. *Appeals of Greenville Textile Supply Co.*, 1 B. T. A. 152; *Donalsonville Oil Mill*, 1 B. T. A. 167; *Murchison National Bank*, 1 B. T. A. 617; *West Virginia & Pennsylvania Coal & Coke Co.*, 1 B. T. A. 790; *Jessie B. Wadsworth*, 1 B. T. A. 1043; *Dover Iron Co.*, 1 B. T. A. 1123; *George J. Reid*, 1 B. T. A. 1168; *Tri-City Electric Co.*, 2 B. T. A. 89; *David Baird & Son, Inc.*, 2 B. T. A. 901.

With the exception of the accounts of Pittsburgh Hickson & Co., of $9,000, the Maxfer Truck Co., of $6,000, and of the Smith Motor Truck Co., amounting to $18,217.17, the evidence of worthlessness of the accounts hereinabove mentioned is not sufficient to warrant the deduction thereof from gross income for the year 1919. The credit extended by the petitioner for materials sold was for a period of from 60 to 90 days. The Board has practically no evidence of worthlessness of the accounts beyond the fact that they were overdue and this fact, standing alone, is not sufficient to warrant the accounts being deducted as worthless. *Appeal of Alemite Die Casting & Mfg. Co.*, 1 B. T. A. 548.

The fact that the value of the stock of the St. Louis Car Co. had declined does not warrant it being charged off as worthless. The company was still in existence. It had not disposed of its assets and the stock had some value.

The Board is satisfied, from the evidence, that the accounts of Pittsburgh Hickson & Co., amounting to $9,000, the Maxfer Truck Co., amounting to $6,000, and the Smith Motor Truck Co., amounting to $18,217.17, were properly determined to be worthless and charged off within the year 1919. The totals of these accounts were, therefore, proper deductions from gross income for 1919.

The deficiency letter discloses that the Commissioner allowed a deduction of $6,884.58 on account of debts ascertained to be worthless and charged off within the year 1919, but the evidence does not disclose whether the account of the Maxfer Truck Co. was included in this allowance. This, however, is a matter that may be determined upon final settlement of the deficiencies.

The reduction of the taxpayer's invested capital for each of the taxable years, on account of the tax paid within the year upon the income for the preceding year, is approved. Section 1207, Revenue Act of 1926. *Appeal of Russel Wheel & Foundry Co.*, 3 B. T. A. 1168.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*